[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
On August 26, 1991, defendant-appellant, John Smith, pled guilty to one count of murder, R.C. 2903.02, for the beating death of Larry Graber, a local elementary school principal. He was sentenced to serve fifteen years to life in prison.
In March 1995, appellant filed a pro se motion to withdraw his guilty plea, alleging his attorney convinced him to plead guilty by stating he would either receive a life without parole or a death sentence should he go to trial and that his attorney also failed to inform the court, at the plea hearing, that appellant was under the influence of "mind-altering" drugs. The motion was withdrawn before it was ruled upon.
On September 19, 1996, appellant, represented by counsel, filed a postconviction relief petition asserting his plea was not "freely and voluntarily" made because he was in a drug-induced state at the time of the plea and the prosecutor promised appellant he would only receive a five-year prison sentence if he pled guilty. He also requested a hearing on his petition. Attached to the petition were the following documents: (1) appellant's affidavit, wherein he stated he was under the influence of "mind-altering" drugs when he entered his guilty plea; (2) uncertified, unauthenticated records from Valley Counseling Services detailing appellant's mental and physical state around the time he entered his plea; (3) copies of numerous newspaper articles reporting details of the case; (4) the affidavit of a local radio personality, John Rogers, who attested to an agreement by the prosecutor to recommend a five-year sentence if appellant would plead guilty to manslaughter; and (5) unauthenticated copies of purported medical and psychological treatises relating to certain medications and psychological conditions. The state filed a motion to dismiss the petition on October 2, 1996. On July 15, 1997, appellant filed a motion requesting a hearing on the petition. In its judgment entry filed August 14, 1997, the trial court granted the state's motion to dismiss. No hearing was held on the petition or the motion to dismiss.
Appellant perfected a timely appeal and now raises one assignment of error for our consideration:
 "The trial court erred in denying defendant-appellant's petition for post-conviction [sic] relief without holding and evidentiary hearing, in that defendant-appellant presented to the trial court supporting affidavits and documentary evidence supporting his claim for relief."
By his sole assignment of error, appellant claims the trial court erred in refusing to hold a hearing on his petition for postconviction relief.
R.C. 2953.21(C) provides:
 "* * * Before granting a hearing on a petition [for postconviction relief], the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."
Moreover, R.C. 2953.21(E) states:
 "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending."
Thus, it is well-established that a postconviction relief petitioner is not automatically entitled to a hearing on the petition. State v. Clark (Apr. 17, 1998), Portage App. Nos. 96-P-0257, 96-P-0258, unreported, at 5. Only after he meets his initial burden to show substantive grounds for relief from the files and records of the case and, often, evidentiary materialsdehors the record, that a hearing is required. Id. The evidencedehors the record must meet a threshold standard of cogency and must materially advance the petitioner's claim(s). State v.Sopjack (Aug. 22, 1997), Geauga App. No. 96-G-2004, unreported, at 7-8. Moreover, the evidence must be admissible evidence, that is to say, proper evidence that would be admissible at the hearing, to be considered in making the determination required by R.C.2953.21(C). See State v. Lundgren (June 26, 1998), Lake App. No. 97-L-196, unreported. The reason being, it is the petitioner's duty to show his entitlement to a hearing on the petition. Clark.
In doing so, he must demonstrate to the court what evidence he would present at the hearing to show he is entitled to the relief requested. Without this requirement, it could be rather easy to obtain a hearing on the petition, but, at the hearing, have a failure of proof to establish the claim, thereby wasting the time and resources of the court and counsel. We think the requirement of admissible evidence is especially so when the petitioner is represented by counsel when filing his postconviction relief petition.
This court has held the analysis of a postconviction relief petition proceeds through three steps. Clark, supra, at 5. First, the court is to review the petition to determine whether it has been pled with sufficient particularity to state a viable claim for relief. Id. If not, the petition should be dismissed.Id. Second, the court is to examine the record in the case to determine if it affirmatively contradicts the allegations in the petition. Id. Third, in light of the court's findings regarding the record, the court is to ascertain whether additional evidentiary materials are required to overcome the indications in the record. Id. at 5-6. If additional materials are necessary and are not filed, the petition should be dismissed without a hearing. Id. at 6.
Appellant made two claims in his petition which he believes show he is entitled to a hearing and relief. First, appellant asserted he did not enter a knowing, intelligent and voluntary plea because he was under the influence of "mind altering" drugs. His petition was stated with sufficient particularity to overcome the initial dismissal. Looking next to the record, the transcript of the plea hearing revealed appellant to be lucid and not under the apparent influence of any illicit or prescribed substance. He was able to answer the questions propounded to him, and he made a voluntary statement of apology to the victim's family. When asked whether he was under the influence of any drugs or alcohol, appellant stated he was not. The transcript revealed the trial court fully complied with the colloquy in Crim.R. 11(C), which led to a presumption that appellant entered his plea knowingly, intelligently, and voluntarily. State v. Gomez (Dec. 5, 1997), Lake App. No. 97-L-021, unreported, at 7.
Appellant attached several documents to his petition to rebut the presumption created by the record. He submitted uncertified, unauthenticated copies of records of his psychological treatment, including drug therapy, at the time of the plea. Medical records are not self-authenticating. Evid.R. 902. To be admissible, the records must be authenticated by the custodian of the records or one with personal knowledge of the record-keeping system at Valley Counseling Services. Evid.R. 901(A) and (B)(1). Thus, because the records in this form would not be admissible at the hearing, they were not proper for consideration.
He also attached copies of unnamed treatises that contained references to various drugs and psychological conditions.
 "Unlike the evidentiary rules of federal courts, the Ohio Rules of Evidence do not provide for the learned treatise exception to the hearsay rule. In Ohio, textbooks and other learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only." Ramage v. Central Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 110.
 "Moreover, the substance of the treatise may be employed only to impeach the crediblity of an expert witness who has relied upon the treatise * * * or has acknowledged its authoritative nature." Stinson v. England (1994), 69 Ohio St.3d 451, paragraph two of the syllabus.
Additionally, appellant attached the affidavit of his friend and local radio personality, John Rogers, who averred that, at the time he entered his guilty plea, appellant was not in a state in which he could understand the consequences of his plea. There is no indication that Mr. Rogers was qualified to give this expert opinion. Evid.R. 702. Hence, Mr. Rogers's testimony was not competent, admissible evidence.
Finally, appellant submitted his own affidavit that essentially repeated the allegations in his petition, that he was under the influence of "mind altering" drugs. The courts of this state have repeatedly held that a petitioner's affidavit alone is insufficient to show entitlement to a hearing. See, e.g.,Lundgren, supra, at 9.
Because he did not provide the court with admissible evidence, aside from his own affidavit, that materially advanced his claim, appellant failed to rebut the evidence on the record that his plea was made knowingly, intelligently, and voluntarily. Thus, the trial court properly dismissed this claim without a hearing.
Second, appellant contended he was induced to plead guilty by promises of a five year prison term.[1]
The record showed appellant was informed of the charge to which he was pleading, murder, and the potential sentence he could serve, fifteen years to life in prison plus a $15,000 fine. He indicated he understood the charge and the sentence. From this colloquy arose a presumption, as stated above, that appellant entered his plea without coercion or threat. Gomez, supra. It was appellant's burden to "submit evidentiary documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises." State v. Kapper (1983),5 Ohio St.3d 36, 38.
In support of this claim, appellant attached only the affidavit of John Rogers who stated that
 "* * * the prosecutor's office accepted the information that I gave them, and indicated, on numerous occasions, that this could be a case of manslaughter, at worse, [sic] and, that the petitioner would do no more than five years in jail if he entered a plea of guilty;
 "* * * on these occasions, the public defender was also present;
 "* * * the prosecutor's office indicated they would offer a manslaughter charge, in exchange for a guilty plea, and five years time, based upon the fact that the petitioner passed the second polygraph exam administered by the prosecutor's office; * * *."
These statements contained no time period during which the alleged negotiations took place. They could have taken place before the indictment or in the two months between the filing of the complaint and the entry of the plea. Also, they lacked specificity with regard to the individuals present for the alleged negotiations. Most importantly, however, is the last quoted statement, that the bargain was a guilty plea to manslaughter in exchange for a five year sentence. Assuming the accuracy of the statement, appellant's claim was still not substantiated. Appellant pled guilty to a charge of murder, not manslaughter, and he did not claim he believed he was entering a plea of guilty to a manslaughter charge. Appellant could not reasonably expect to receive a five year sentence. Mr. Rogers' statement did not materially advance appellant's claim, and appellant presented no other evidence in support of his contention.[2] Thus, the trial court correctly concluded that the petition should be dismissed without a hearing.
Appellant, in his appellate brief, challenges another aspect of the trial court's judgment entry. He claims the trial court incorrectly concluded the allegations in the petition were barred by res judicata because appellant alleged a constitutional violation and attached evidence dehors the record. However, the trial court did not conclude appellant's claims were barred by resjudicata. The court stated, "* * * any claim that Petitioner was not properly informed of his rights at the plea hearing could have been raised by way of appeal. Thus, the doctrine of res judicata
bars Petitioner from raising this claim by way of a postconviction petition." The court concluded that, to the extent appellant challenged the Crim.R. 11(C) colloquy directly, that is, to the extent appellant claimed the trial court did not personally inform him of his rights as required by Crim.R. 11(C), those claims would be barred by res judicata. We agree with this legal conclusion, but appellant did not raise this direct challenge in either his petition or on appeal.
In accordance with the foregoing, appellant's assignment of error is overruled, and the judgment of the Trumbull County Court of Common Pleas is affirmed. ______________________ JUDGE ROBERT A. NADER
FORD, P.J.,
CHRISTLEY, J., concur.
[1] This is the contention appellant made in his petition filed with the trial court. On appeal, appellant attempts to allege he was induced to plead guilty by threats of the death penalty. Since he did not allege the death penalty threats before the trial court, we will not address the allegation, but will confine our discussion to the allegation that appellant's plea was induced by a promise of a five-year sentence.
[2] Appellant also attached to his petition numerous copies of newspaper articles about the case and the investigation. These articles advance no claim made by appellant.